# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| SAFECO INSURANCE<br>COMPANY OF OREGON | CIVIL ACTION |
| VERSUS | 23-584-SDD-SDJ |
| JULIE NEAL MARYMAN AND<br>JAMES MARYMAN | |

## RULING

This matter is before the Court on the *Motion for Summary Judgment*[1] by Plaintiff, Safeco Insurance Company of Oregon ("Safeco"). Defendants, Julie Neal Maryman and James Maryman (the "Marymans"), have filed an *Opposition*[2] to this motion, to which Safeco filed a *Reply*.[3] For the following reasons, the Court finds that Safeco's motion should be granted.

**I.    LOCAL RULES AND EVIDENTIARY OBJECTIONS**

**A.  Local Rules – Statements of Fact**

Parties are required to comply with the following Local Rules of the Middle District of Louisiana in filing and opposing motions for summary judgment. Local Rule 56(f) provides:

> Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted. **An assertion of fact set forth in a statement of material facts shall be followed by a citation to the specific page or paragraph of identified record material supporting the assertion.** The court may disregard any statement of fact not supported by

---

[1] Rec. Doc. 15.
[2] Rec. Doc. 16.
[3] Rec. Doc. 22.

a specific citation to record material properly considered on summary judgment. **The court shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts**. (emphasis added).

Local Rule 56 (c) requires an opposing party to:

submit with its opposition a separate, short, and concise statement of material facts. **The opposing statement shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by a record citation as required by this rule**. Each such statement shall begin with the designation "Admitted," "Denied," or "Qualified" and, in the case of an admission, shall end with such designation. The opposing statement may contain in a separately titled section additional facts, each set forth in a separately numbered paragraph and supported by a record citation as required by subsection (f) of this rule. (emphasis added).

In the Marymans' *Response to Statement of Material Facts by Safeco Insurance Company of Oregon*,[4] they admit all of Safeco's statements except for Nos. 11 through 19, to which they submit "qualified" responses. The Marymans do not reference any evidence in connection with their qualified responses. Thus, pursuant to Rule 56 of the Federal Rules of Civil Procedure and the Local Rules of this Court, these statements are deemed admitted unless they are otherwise inadmissible based on the Marymans' evidentiary challenges.

### B. The Marymans' Hearsay Objections

With respect to Safeco's Statement of Material Fact[5] Nos. 11, 12, 13, 14, 15, 16, 17, and 19, the Marymans admit that the facts are supported by the Affidavit of Safeco adjuster Kent Stiles,[6] but object to the statements as hearsay. The basis of the hearsay

---

[4] Rec. Doc. 17.
[5] Rec. Doc. 15-2.
[6] Rec. Doc. 15-3.

objections appears to be that Stiles relays information in his affidavit which came from other declarants (e.g., the fire cause investigator, the Baton Rouge Fire Department incident report, a Safeco field adjuster, and a report by an investigating company after canvassing the neighborhood).

At the summary judgment stage, "materials cited to support or dispute a fact need only be *capable* of being 'presented in a form that would be admissible in evidence.'"[7] For this reason, "[w]hether the statements as made by the declarant are hearsay is not relevant in the summary judgment context."[8] The Marymans have not shown that Stiles' testimony regarding the contents of reports and the findings of adjusters and investigators could not be reduced to admissible evidence at trial. Safeco can properly present these items at trial simply by calling on the declarants who made the original statements to testify. Accordingly, the Marymans' hearsay objections are overruled.

Because the hearsay objections are unfounded, the subject statements of fact are deemed admitted for the purposes of this summary judgment. However, as discussed *infra*, the Court finds that there is sufficient support in the facts and law for the granting of this motion even without the statements to which the Marymans submitted objections and qualified responses.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

This case arises from an insurance dispute between Safeco and the Marymans over damages caused by a fire to a home located at 377 N. Waverland Drive in Baton

---

[7] *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016) (quoting Fed. R. Civ. P. 56(c)(2)).
[8] *Barnett v. Louisiana Dep't of Health*, No. CV 17-1793-JWD-SDJ, 2023 WL 2467876, at *2 (M.D. La. Mar. 10, 2023) (quoting *Texas Ent. Ass'n, Inc. v. Hegar*, No. 17-594, 2019 WL 13036162, at *15 n.12 (W.D. Tex. Feb. 27, 2019), *aff'd*, 10 F.4th 495 (5th Cir. 2021)).

Rouge, Louisiana ("the Property"), on December 31, 2022.[9] At the time of the fire, the Property was insured under a homeowners insurance policy issued by Safeco to the Marymans ("the Policy").[10]

On July 24, 2023, Safeco filed a *Complaint for Declaratory Judgment*[11] seeking a declaration from this Court that the Policy does not provide coverage for damage to the dwelling (Coverage A) or "other structures" (Coverage B)[12] to the Property because the Marymans did not reside at the Property at the time of the fire. Safeco avers that at the time of the fire, the Marymans resided at a nearby home located at 353 N. Waverland Drive.

The Marymans answered Safeco's declaratory judgment complaint on August 1, 2023.[13] In their Answer, the Marymans lodged a counterclaim against Safeco asserting the existence of coverage for dwelling damages to the Property. The Marymans admitted that they would intermittently spend time, sometimes overnight, at 353 N. Waverland Drive in order to care for Julie Maryman's mother, Scharlie Neal, in her ailing health. After Ms. Neal's death in August of 2021, the Marymans state that they continued to intermittently sleep at 353 N. Waverland Drive to cope with the loss. However, the Marymans contend that at all relevant times, including the date of the fire, they still "resided" at the insured Property. In addition to the payment of insurance proceeds for damage to the Property, the Marymans seek extracontractual damages against Safeco for alleged bad faith claim handling.

---

[9] Rec. Doc. 1, ¶ 8.
[10] *Id.* at ¶ 11.
[11] Rec. Doc. 1.
[12] Safeco clarifies in its memorandum in support of this motion (Rec. Doc. 15-1, footnote 1) that adjustment of the Marymans' claim for personal property / contents damage remains ongoing. Safeco does not seek declaratory judgment on or dismissal of the personal property claim at this time.
[13] Rec. Doc. 9.

On November 7, 2023, Safeco filed this *Motion for Summary Judgment*[14] arguing that the undisputed facts establish what it argued in its *Complaint for Declaratory Judgment*: that the Marymans did not reside at the Property at the time of the fire. As a result, Safeco contends that it is entitled to judgment declaring that dwelling damages from the fire on December 31, 2022, are not covered under the terms of the Policy. For the same reasons, Safeco's summary judgment also seeks partial dismissal of the Marymans' counterclaims for insurance payments and bad faith penalties in connection with dwelling coverage. In opposition, the Marymans argue that issues of material fact regarding whether they resided at the Property on the date of the fire preclude summary judgment.[15]

The Marymans expressly admit the following facts as posited in Safeco's Statement of Material Fact: Julie Maryman owns the Property where the fire occurred. At some point prior to Ms. Neal's death on August 24, 2021, the Marymans began "going back and forth" between the Property and Ms. Neal's house located at 353 N. Waverland Drive.[16] In the last year of Ms. Neal's life, the Marymans were spending less time at the Property and "significant amounts of time" taking care of Ms. Neal.[17]

Upon Ms. Neal's death on August 24, 2021, Julie Maryman inherited an ownership interest in the 353 N. Waverland Drive home.[18] Thereafter, the Marymans continued to spend "a significant amount of time" at 353 N. Waverland Drive.[19] During his Examination Under Oath on May 18, 2023, Mr. Maryman was not able to specify how many nights per

---

[14] Rec. Doc. 15.
[15] Rec. Doc. 16.
[16] Rec. Doc. 15-2, ¶ 24.
[17] *Id.* at ¶ 25.
[18] *Id.* at ¶ 23.
[19] *Id.* at ¶ 26.

week he and his wife would spend at the Property in the year prior to the fire or whether at least half of their time was spent at the Property.[20] During the time leading up to the fire, the Marymans had been cooking and bathing at 353 N. Waverland Drive, rather than the Property.[21]

In August of 2022, approximately four months before the fire, the Marymans discontinued water service to the Property.[22] Entergy bills for the Property reflect less than $50.00 of billing per month between May and October of 2022; Julie Maryman explained that she would turn the power off when nobody was present at the Property.[23] Storage boxes were present in every room at the Property, including the kitchen, living room, and bedrooms.[24]

The Marymans slept at 353 N. Waverland Drive on the night prior to the fire.[25] James Maryman did not spend any nights at the Property during the week prior to the fire, and Julie Maryman could not recall whether she had done so.[26] When the fire began, neither of the Marymans were present at the Property. Julie Maryman was at the 353 N. Waverland Drive home, and James Maryman was at work.[27]

## III. LAW & ANALYSIS

### A. Summary Judgment

In reviewing a party's motion for summary judgment, the Court will grant the motion if (1) there is no genuine issue of material fact, and (2) the mover is entitled to judgment

---

[20] *Id.* at ¶ 27.
[21] *Id.* at ¶ 29.
[22] *Id.* at ¶ 28.
[23] *Id.* at ¶ 30.
[24] *Id.* at ¶ 31.
[25] *Id.* at ¶ 33.
[26] *Id.* at ¶ 34.
[27] *Id.* at ¶ 32.

as a matter of law.[28] This determination is made "in the light most favorable to the opposing party."[29] "When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of a genuine issue of material fact with respect to those issues on which the movant bears the burden of proof at trial."[30] If the moving party satisfies its burden, "the non-movant must respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue for trial."[31] However, the non-moving party's burden "'is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'"[32]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[33] All reasonable factual inferences are drawn in favor of the nonmoving party.[34] However, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[35] "Conclusory allegations unsupported by specific facts . . . will not prevent the award of summary judgment; 'the plaintiffs [can]not rest on his allegations . . . to get to a jury without any "significant probative evidence tending to

---

[28] FED. R. CIV. P. 56(a).
[29] *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); 6 V. MOORE, FEDERAL PRACTICE 56.15(3) (2d ed. 1966)).
[30] *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718 (5th Cir. 1995) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 333–34 (1986)).
[31] *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49 (1986)).
[32] *Willis v. Roche Biomedical Lab., Inc.,* 61 F.3d 313, 315 (5th Cir. 1995) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).
[33] *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).
[34] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (internal citation omitted).
[35] *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010) (internal citation omitted).

support the complaint.""*36*

### B. The Policy Language

Safeco issued Policy No. OF2305560 to the Marymans, effective from October 13, 2022 to October 13, 2023. The Policy provides as follows, in pertinent part:

**SECTION I – PROPERTY COVERAGES**

**BUILDING PROPERTY WE COVER**

**COVERAGE A – DWELLING**

We cover:

1. the dwelling on the ***residence premises*** shown in your Policy Declarations used principally as a private residence, including structures attached to the dwelling other than fences, driveways or walkways;

2. attached carpeting, built-in appliances, fixtures; and

3. materials and supplies located on or next to the ***residence premises*** used to construct, alter or repair the dwelling or other structures on the residence premises.[37]

\* \* \*

**POLICY DEFINITIONS**

…

o. ***"Residence premises"*** means:

(1) the one, two, three or four family dwelling, used principally as a private residence;

---

[36] *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249).
[37] Rec. Doc. 1-1, p. 26.

(2) other structures and grounds; or

(3) that part of any other building;

**where you reside** and which is shown in your Policy Declarations.[38]

### C. Interpretation of Insurance Contracts

Because subject matter jurisdiction in this case is based on diversity of citizenship, the Court applies the law of the forum state. In Louisiana, "[i]n an action under an insurance contract, the insured bears the burden of proving the existence of the policy and coverage. The insurer, however, bears the burden of showing policy limits or exclusions."[39] Summary judgment declaring a lack of coverage under an insurance policy is not proper unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded.[40]

An insurance policy is a contract between the parties and is construed using ordinary contract principles. The parties' intent, as reflected by the words of the policy, determines the extent of coverage. An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. However, if after applying the other rules of construction an ambiguity remains, the ambiguous provision is construed against the drafter and in favor of the insured.[41]

---

[38] *Id.* at p. 51 (emphasis added).
[39] *Tunstall v. Stierwald*, 2001–1765 (La. 2/26/02), 809 So.2d 916, 921 (internal citations omitted).
[40] *Elliott v. Continental Casualty Company*, 2006–1505 (La. 2/22/07), 949 So.2d 1247; *Reynolds v. Select Properties, Ltd.*, 93–1480 (La.4/11/94), 634 So.2d 1180; *Palmer v. Martinez*, 45,318 (La.App.2d Cir. 7/21/10), 42 So.3d 1147, *writs denied*, 2010–1952, 2010–1953, 2010–1955 (La.11/5/10), 50 So.3d 804, 805.
[41] *Curry v. Taylor*, 40,185 (La. App. 2 Cir. 9/21/05), 912 So. 2d 78, 81.

The "residence premises" provision at issue here is not exclusionary; rather, it establishes the scope of coverage.[42] Accordingly, the Marymans bear the burden of proving that their loss is covered by the terms of the Policy.

The primary issue before the Court is whether the Property qualified as the Marymans' "residence premises." This requires a determination of whether the Marymans "resided" at the Property on the date of the fire. The Policy does not provide a definition of "reside." Other courts in this circuit have addressed this issue in the context of insurance disputes involving similar policy language. Interpreting an almost identical policy definition of "residence premises," the Fifth Circuit adopted "the generally prevailing meaning of 'reside,' which is defined as 'to dwell permanently or for a considerable time, to have one's settled or usual abode, to live, *in* or *at* a particular place.'"[43]

Safeco moves for summary judgment arguing that there is no dwelling coverage because the Marymans did not reside at the Property at the time of the fire. Safeco argues that the facts and reasoning in *Korbel v. Lexington Ins. Co.*[44] compel judgment in its favor. In *Korbel*, the insured property was damaged by Hurricane Katrina during renovations and before the plaintiff had moved into the house. The evidence showed that the plaintiff ate, bathed, and slept at his parents' house, and "sometimes" slept at the insured property. At the time of the loss, the house was two-thirds gutted, lacked a finished bathroom and kitchen (which had no refrigerator), and contained minimal furniture. In opposing the insurer's summary judgment on the residence issue, the plaintiff pointed out that he

---

[42] *See, e.g., Kennett v. USAA Gen. Indem. Co.,* No. CV 16-14765, 2019 WL 3081668, at *6 (E.D. La. July 15, 2019), *aff'd*, 809 F. App'x 228 (5th Cir. 2020).
[43] *Korbel v. Lexington Ins. Co.*, 308 F. App'x 800, 805 (5th Cir. 2009) (citing Oxford English Dictionary (2d ed.1989)).
[44] *Id.*

received his mail at the insured property and went there every day, although only "sometimes" sleeping there. Under these circumstances, the Fifth Circuit affirmed the district court's granting of summary judgment in favor of the insurer:

> [M]any people receive mail at places other than their residences. … Korbel clearly resided at his parents' house, where he ate, bathed, and usually slept, and which he referred to as his "home" during his deposition. Under these circumstances, there is no question that Korbel did not reside at the house.[45]

In a subsequent case in the Eastern District of Louisiana involving the same plaintiff and the same issue,[46] the court again granted the insurer's motion for summary judgment. In that case, the plaintiff argued he resided at the insured property because he received mail there; he paid water and electric bills for the property; he was there every day performing maintenance or checking on the property; and he had some belongings stored there. Mirroring the reasoning from the earlier *Korbel* case, the court found the plaintiff's arguments unpersuasive: "Many people pay bills for properties at which they do not reside. Many people receive mail at properties at which they do not reside."[47] The court found that the plaintiff did not engage in leisure activities at the insured property, and only went there to work on or check on the house.[48] Under these circumstances, the court found insufficient evidence to raise a material issue of fact as to whether the plaintiff resided at the insured property.

Safeco also relies on *Kennett v. USA General Indemnity Co.*,[49] where a jury found, under similar policy language, that the insured did not "reside" at the property in question.

---

[45] *Id.* at 805–06 (5th Cir. 2009).
[46] *Korbel v. Republic Fire & Cas. Ins. Co.*, No. 2:21-CV-2214, 2023 WL 3741125 (E.D. La. May 31, 2023).
[47] *Id.* at *4.
[48] *Id.*
[49] No. CV 16-14765, 2019 WL 3081668 (E.D. La. July 15, 2019), *aff'd*, 809 F. App'x 228 (5th Cir. 2020).

In *Kennett*, a fire destroyed the insured's property approximately one month after his release from prison. The insured testified that he had "moved in" with a friend in a different house prior to his incarceration and the subsequent fire, but intermittently stayed at the insured property "when [he] needed to go back and forth to do [his] work."[50] Although the insured testified that he intended the insured property to be his primary residence at all relevant times, the Fifth Circuit found that sufficient contrary evidence existed to support the jury's finding. This evidence included the fact that water service had not been reactivated between the insured's release from prison and the fire; testimony from the property manager that no one lived at the house; and testimony from the insurer's fire expert that the house showed no signs of residency based on the presence of stored contents and construction materials.

The Marymans argue that the decisions in *Kennett* and both *Korbel* cases are distinguishable on the facts. In the *Korbel* cases, the insured had not yet moved into the subject property at the time of the loss. The Marymans contend that their situation is clearly different because they moved into the Property nearly thirty years before the fire. The Marymans contend *Kennett* is distinguishable because there, the insured was incarcerated and had been leasing out the property.

Although *Kennett* and the *Korbel* cases involved slightly different situations than that of the present case, the Court does not find that they are distinguishable to the extent argued by the Marymans. The fact that the plaintiff in the *Korbel* cases had not yet "moved into" the subject properties undoubtedly played a role in the courts' decisions. However, there are other factual similarities in the instant case with respect to the insured's use of

---

[50] *Kennett v. USAA Gen. Indem. Co.*, 809 F. App'x 228, 230 (5th Cir. 2020).

the property *at the time of the loss*, notwithstanding the fact that the Marymans had initially moved into Property in the mid-1990s. Notably, the 2009 *Korbel* court found it significant that the plaintiff ate, bathed, and regularly slept at a location other than the insured property.[51] This fact separately supported the conclusions reached in that case. Accordingly, the *Korbel* reasoning is appropriately applied here where the Marymans began spending significant amounts of time (which included cooking, bathing, and sleeping) at a different property more than a year prior to the loss.

The Court finds the Marymans' attempt to distinguish the facts of *Kennett* misplaced. Contrary to the Marymans' characterization of that case, the insured was not incarcerated, nor was he renting out the property, at the time of the loss. Instead, the *Kennett* plaintiff was released from prison about one month prior to the loss, and the case does not indicate that the property was being rented out at the time of the fire.[52]

The Marymans contend that *Meridian Sec. Ins. Co. v. Murphy*,[53] a case from the Eastern District of Texas, supports their position that they resided at the Property at the time of the fire. There, the court found that issues of material fact precluded the insurer's summary judgment where the insured, a truck driver, testified that he traveled for work but slept at the insured property "every other weekend," where he had furniture and various personal items.

Unlike the insured in *Merdian*, the Marymans have conceded that they regularly spend time at a home other than the insured Property by choice. The circumstances in *Meridian* involved an insured who continually traveled for work, and only made periodic

---

[51] *Korbel*, 308 F. App'x at 805.
[52] *Kennett*, 809 F. App'x at 230–31.
[53] No. 6:21-CV-353-JDK, 2022 WL 7145419 (E.D. Tex. Oct. 12, 2022), *aff'd*, No. 22-40811, 2023 WL 5346064 (5th Cir. Aug. 18, 2023).

visits to his property because he was "basically gone all the time" hauling cargo out of state.[54] Accordingly, *Meridian* does not bear strong factual relation to the instant case.

Considering the undisputed facts and applicable jurisprudence, the Court finds that the Marymans have not presented sufficient evidence to defeat Safeco's motion for summary judgment. The undisputed facts show that the Marymans did not reside at the Property during the time leading up to and including the fire on December 31, 2022. Water service to the Property was discontinued more than four months before the fire.[55] The Marymans admit that they had been cooking and bathing at 353 N. Waverly Drive, not the Property, following the deactivation of water service in August of 2022.[56] There were storage boxes in every room.[57] Neither of the Marymans was present at the Property when the fire began, and Julie Maryman was at the 353 N. Waverland Drive home at that time.[58] These types of factors, particularly the lack of running water and the insured's performance of basic daily living activities elsewhere, have been given considerable weight by other courts considering this issue.[59]

The Court further finds that the Marymans' statement of material facts[60] does not create a genuine dispute to defeat summary judgment. For example, the Marymans state that they cancelled water service to the Property because of financial hardship due to the passing of Ms. Neal and the need to purchase James Maryman's father a new vehicle.[61]

---

[54] *Id.* at *2.
[55] Rec. Doc. 15-2, ¶ 28.
[56] *Id.* at ¶ 29.
[57] *Id.* at ¶ 31.
[58] *Id.* at ¶ 32.
[59] *Korbel v. v. Lexington Ins. Co.*, 308 F. App'x 800; *Korbel v. Republic Fire & Cas. Ins. Co.*, 2023 WL 3741125; *Kennett*, 809 F. App'x 228; *Keelen v. Metropolitan Prop. & Cas. Ins. Co.*, No. 11-1596, 2012 WL 1933747 (E.D. La. 5/29/12).
[60] Rec. Doc. 17, p. 5.
[61] *Id.* at ¶ ¶ 3, 4. Safeco admits these facts but contends they are immaterial to the issue (Rec. Doc. 22-1, ¶ ¶ 3, 4).

Explaining *why* the water service was discontinued does not create an issue of fact with respect to *whether* they resided at the Property. The fact remains that the Marymans chose to deactivate water service at the Property while continuing to pay for water service to 353 N. Waverland Drive, where they admit they bathed and cooked. Further, the fact that the Marymans "did not remove furniture or significant amounts of personal belongings" from the Property[62] is insufficient to show that they actually resided there, with no running water. These facts do not outline activities the Marymans affirmatively undertook at the Property showing they resided there.

The Marymans also state that Julie Maryman spent "most nights" at the Property during the year prior to the fire.[63] As supporting evidence, the Marymans cite the following exchange in the Examination Under Oath of Julie Maryman:

> Q. I see, okay. But would it be fair to say that in the year prior to the fire, you were still going home to your 377 address to sleep almost every night?
>
> A. I can't give you exact dates. But yes, ma'am, 377, all our mail comes there, you know. We kept all the house. The lawn. We had roof work done in the last year. That was our primary residence.[64]

In their opposition brief, the Marymans contend that this inability to recall exact dates "indicates that it was often enough to lose track."[65]

In response, Safeco avers that the statement that Julie Maryman spent "most nights" at the Property is not supported by the evidence the Marymans cite, and is controverted by other evidence in the record. The Court agrees. First, the quoted portion of Julie Maryman's Examination Under Oath does not clearly support the statement.

---

[62] *Id.* at ¶ 6.
[63] *Id.* at ¶ 1.
[64] Rec. Doc. 15-4, p. 14, lines 17–25.
[65] Rec. Doc. 16, p. 7.

Instead, it shows an unclear response to the question posed with a disclaimer that a precise answer could not be given, and a conclusory statement that the Property was "our primary residence." The Court does not read this response as indicating that Julie Maryman spent too many nights at the Property to provide a more precise response. Second, other evidence in the record contradicts this statement. For example, Julie Maryman could not give an answer when asked whether she had been spending more or less than half of her time at the Property during the relevant period.[66]

The Marymans' Brief in Opposition contains limited references to record evidence showing they resided at the Property. They state that they "lived at and maintained 377 N. Waverland Drive by continuously mowing the lawn and even conducting significant roof repairs performed in 2022."[67] However, this does not support residence at the Property as understood by the jurisprudence discussed *supra*. In *Korbel v. Republican Fire & Cas. Ins. Co.*, the court specifically listed several of the facts relied upon by the Marymans as insufficient to create an issue of material fact on the residence requirement, including the insured's visiting the property every day to perform work or check on the property; receiving mail at the property; paying utility bills for the property; storing belongings at the property; and identifying the property as their address/residence when examined under oath.[68]

The Marymans also conclusively state that they "permanently moved to 353 N. Waverland the day after the fire,"[69] but fail to explain a change in circumstances on that particular day which shows this official, "permanent" move. Instead, the Marymans admit

---

[66] Rec. Doc. 15-4, p. 61, lines 9–14.
[67] Rec. Doc. 16, p. 2, citing Rec. Doc. 15-4 (Examination Under Oath of Julie Maryman).
[68] 2023 WL 3741125 at *3.
[69] Rec. Doc. 16, p. 2, citing Rec. Doc. 15-5 (Examination Under Oath of James Maryman).

that they had already been cooking and bathing at 353 N. Waverland Drive prior to the fire, and had elected to discontinue water service to the Property months before.[70]

Other record evidence submitted by Safeco further supports the Court's conclusion. Aside from inapposite hearsay objections, the Marymans failed to dispute this additional evidence. For example, Safeco attaches to the affidavit of Safeco adjuster Kent Stiles[71] a report by Becker & Company[72] following its investigation and canvassing of the Property neighborhood. According to the report dated March 3, 2023, one neighbor stated that he did not know when the Property was last inhabited, and another stated that nobody had lived at the Property for about five months. The Stiles affidavit also attached a copy of the Baton Rouge Fire Department incident report, which reflected that responders struggled to gain entry into the Property because doors were "blocked with objects."[73] Additionally, Stiles stated that a January 4, 2023, inspection by Safeco specialist Jose Ruiz revealed that the house contained excessive storage contents such that a complete walk-through could not be performed.[74] Stiles also testifies that James Maryman told him that Julie Maryman would sleep on the couch on the occasions when she would spend the night at the Property.[75]

In sum, all the facts put forth by the Marymans are either insufficient to create a genuine issue under pertinent case law interpreting the residence requirement, or not supported by record evidence. Furthermore, even if the Marymans' hearsay objections were effective, the Court still reaches the same conclusion when only considering the

---

[70] Rec. Doc. 15-2, ¶ 29.
[71] Rec. Doc. 15-3.
[72] *Id.* at p. 175.
[73] *Id.* at p. 131–32.
[74] *Id.* at p. 2, ¶ ¶ 5,6.
[75] *Id.* at p. 3, ¶ 7.

facts to which the Marymans expressly admitted. Accordingly, Safeco's motion for summary judgment regarding dwelling damage coverage shall be granted.

### D. Extracontractual Damages

In their counterclaim, the Marymans assert entitlement to bad faith damages under La. R.S. 22:1973 and 22:1892 due to Safeco's alleged arbitrary and capricious failure to timely pay amounts due after receiving satisfactory proof of loss. An insurer having a "reasonable basis for denying coverage or reasonable doubts as to whether coverage applies" does not act in bad faith.[76] The record reflects that Safeco promptly investigated the loss on January 7, 2023. Given that the structural damage from the fire was not covered under the Marymans' Policy, Safeco had a "reasonable and legitimate question as to the extent" of its liability such that the bad faith claims should be dismissed.[77]

### IV. CONCLUSION

For the reasons set forth above, the *Motion for Summary Judgment*[78] filed by Plaintiff Safeco Insurance Company of Oregon is GRANTED. The counterclaims by Defendants Julie Neal Maryman and James Maryman for dwelling damages under the Policy are dismissed with prejudice. Defendants' contents claim remains before the Court; therefore, this should be considered a partial summary judgment grant.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this __29th__ day of ____April____, 2024.

_____
SHELLY D. DICK
CHIEF DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA

---

[76] *Rainbow USA, Inc. v. Nutmeg Ins. Co.,* 612 F.Supp.2d 716, 732 (E.D. La. 2009).
[77] *Louisiana Bag Co. v. Audubon Indem. Co.*, 2008-0453 (La. 12/2/08), 999 So. 2d 1104, 1114.
[78] Rec. Doc. 15.